Thompson Law Office, LLC
Colin M. Thompson
2nd Floor, J.E. Tenorio Building
PMB 917 Box 10001
Saipan, MP 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

*Attorney for Plaintiff
Eric Agulto Borja*

FILED
Clerk
District Court

FEB - 5 2016

for the Northern Mariana Islands
By_____
     (Deputy Clerk)

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN MARIANA ISLANDS

CV 16- 0005

| | |
|---|---|
| ERIC AGULTO BORJA<br><br>    Plaintiff,<br><br>v.<br><br>ROME RESEARCH CORPORATION and DOES 1-5,<br><br>    Defendants. | CIVIL CASE NO. 16-_____<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff ERIC AGULTO BORJA hereby files this complaint against Defendant ROME RESEARCH CORPORATION on the following grounds:

### **NATURE OF THE ACTION**

1.   This is an action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII") to correct unlawful employment practices on the basis of race, national origin, and retaliation. As alleged below, Defendant Rome Research Corporation ("RRC") unlawfully subjected Plaintiff Eric Agulto Borja ("Borja") to unlawful discrimination based on his race and national origin, thereby creating a hostile work

environment. Borja further alleges that RRC retaliated against Borja after he complained to the management of RRC regarding the unlawful discrimination.

## JURISDICTION AND VENUE

2. The United States District Court for the Northern Mariana Islands has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f)(1), (3).

3. Venue in this Court is proper pursuant to 28 USC § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PROCEDURAL PREREQUISITES

4. Borja has satisfied all required procedural conditions prior to instituting this lawsuit.

5. On or about November 17, 2014, Borja filed a Charge of Discrimination with the EEOC against RRC.

6. RRC received notice of the Charge of Discrimination on November 21, 2014.

7. On or about November 11, 2015, the EEOC issued a Notice of Right to Sue based on the Charge of Discrimination filed November 17, 2014.

## PARTIES

8. Borja is a United States citizen who, at all relevant times, lived and worked in the Commonwealth of Northern Marianas Islands.

9. Borja was employed by RRC from June 14, 2005 through December 9, 2014.

10. At all relevant times, RRC has continuously been, and is now, a New York Corporation doing business in the Commonwealth of the Northern Islands on the islands of Saipan and Tinian.

11. At all relevant times, RRC was an "employer" as defined by 42 U.S.C. § 2000e(b), (g), and (h) because RRC has continuously been and is now engaged in an industry affecting commerce and has at least 15 employees.

12. Borja is ignorant of the true names and capacities of Does 1-5. Therefore, Borja is suing the Doe defendants using fictitious names. Borja reserves the right to amend the complaint to name one or more Doe defendants at the time Borja learns their true identities.

13. On information and belief, all of the acts and omissions alleged in this complaint were undertaken by and are attributable to RRC and the Doe defendants, each acting as successor, agent, employee, or under the direction and control of the other defendants. Borja further alleges that all alleged acts and failures to act were within the scope of each agency and employment relationship and that each of RRC and the Doe defendants participated in, approved, or ratified each of the unlawful acts or omissions alleged in this complaint. Whenever this complaint refers to an act or omission undertaken by RRC, unless specified otherwise, the act or omission will be deemed to be the act or omission of RRC and each of the Doe defendants, acting individually, jointly, and severally.

## FACTUAL BACKGROUND

14. On June 14, 2005, RRC hired Borja for the position of Computer Data Librarian at $10.18 per hour, paid bi-weekly.

15. Borja's first day of work for RRC was July 1, 2005.

16. Borja performed his job in a manner that was satisfactory to RRC.

17. Borja's satisfactory performance led RRC to promote Borja several times.

18. On April 12, 2007, RRC promoted Borja to the position of Electronic Equipment Operator/Computer Operator I.

19. In this position, Borja received $12.28 per hour, paid bi-weekly.

20. As a result of Borja's promotion to Equipment Operator/Computer Operator I, RRC increased Borja's job responsibilities.

21. RRC increased Borja's pay and responsibilities because RRC was and continued to be satisfied by Borja's performance.

22. On October 13, 2010, based on test scores achieved by Borja, RRC promoted Borja to Maintenance Technician.

23. In this position, Borja received $14.62 per hour, paid bi-weekly.

24. As a result of Borja's promotion to Maintenance Technician, RRC increased Borja's job responsibilities.

25. RRC increased Borja's pay and responsibilities because RRC was and continued to be satisfied by Borja's performance.

26. In May 2013, Borja received a commendation letter from the International Broadcasting Bureau for the "fine assistance" that Borja provided as an employee of RRC.

27. Through May 2013, RRC never disciplined, reprimanded, or counseled Borja in the course of Borja's employment with RRC.

28. From 2005 to September 2013, Mr. Edward Williams was the Saipan Site Manager for RRC and was Borja's day-to-day manager.

29. In September 2013, RRC hired Mr. Paul Gordon ("Gordon") to be the Program Manager for the Saipan and Tinian RRC facilities.

30. Gordon immediately made Borja uncomfortable at work because Gordon frequently made verbal remarks to Borja that suggested that Borja that Gordon looked down on Borja because Borja was a Chamorro man.

31. From September 2013 onward, Gordon was verbally abusive toward Borja and other employees working at the Saipan and Tinian facilities.

32. On February 3, 2014, Gordon shouted the epithet "Fucking Kid" near the Saipan facility.

33. Other employees heard Gordon shouting at Borja.

34. On February 3, 2014, Borja called up Tim Higgins ("Higgins"), RRC's Director of Operations, Communications Programs and reported that he felt that Gordon was discriminating against Borja because Borja was Chamorro.

35. Borja called Higgins because Borja had previously met Higgins while working for RRC.

36. Borja followed RRC Policy 419 when reporting Gordon's conduct to Higgins—according to Policy 419 section 5.3, "Any individual who believes he/she, or any other individual, is being Harassed … may report the Harassment to their manager, the office manager of their location or any other member of [RRC]'s management staff."

37. In a letter dated February 7, 2014, Gordon "counseled" Borja for reporting Gordon's conduct to Higgins, despite Policy 419, and warned Borja that Borja would be subject to "immediate termination" if Borja did not report his complaints in the manner specified in Gordon's February 7 letter.

38. Gordon retaliated against Borja in other ways, including restricting Borja's ability to assist the site manager and limiting Borja's access to certain facilities.

39. These limitations prevented Borja from fulfilling his job responsibilities to RRC in a manner that was satisfactory to RRC.

40. Gordon verbally informed other RRC employees that Gordon suspected that Borja was sending emails to RRC in violation of an email policy that Gordon wrote.

41. Gordon also ridiculed Borja because Borja was "contract worker" who was dependent on the wages that Borja received from RRC.

42. Gordon frequently intimidated Borja and other employees by shouting and slamming doors.

43. Gordon frequently uses sexual innuendo and refers to employees in a sexual manner.

44. Borja has asked Gordon to stop using innuendo and referring to employees in a sexual manner, but Gordon refused.

45. Gordon frequently makes fun of employees for their appearance and grooming.

46. In June 2014, Gordon banned Borja from entering the transmitter building on Saipan.

47. Borja asked Williams if he [Borja] could speak to Gordon regarding the ban from the transmitter room.

48. Later that day, Williams escorted Borja to Gordon's office.

49. When Borja attempted to ask Gordon about why Gordon had banned Borja from the transmitter area, Gordon began shouting and pointing his finger at Borja.

50. Later, the same day, one of Borja's family members overheard Gordon making racially charged remarks to Williams and another man regarding Borja.

51. Gordon prohibited Borja from working overtime hours, but other employees were allowed to work overtime hours.

52. On June 2, 2014, Borja wrote an email to Weissenberger in which he complained about some of Gordon's conduct.

53. Borja wrote a letter to Weissenberger in July 2014 in which Borja detailed some, but not all of the issues with Gordon.

54. Although Weissenberger told Borja that RRC would conduct an investigation into Gordon's conduct, on information and belief, RRC never performed such an investigation.

55. In October 2014, Weissenberger delivered a letter to Borja in which Weissenberger stated that due to a "recent internal audit," that RRC was changing Borja's title from Maintenance Technician to General Laborer and was reducing Borja's rate of pay from $14.62 per hour to $11.95 per hour.

56. RRC altered Borja' official job responsibilities at the time RRC lowered Borja's pay.

57. RRC never explained why RRC had chosen to conduct a "recent internal audit" or how or why RRC had misclassified Borja's employment.

58. On information and belief RRC and Gordon demoted Borja on account of Borja's complaints to RRC regarding Gordon's workplace misconduct.

59. On November 10, 2014, Borja sent an EEOC intake questionnaire alleging discrimination based on Race, National Origin, plus Retaliation, and affirmed that Borja wanted to file a charge of discrimination against RRC.

60. On information and belief, RRC received notice of Borja's filing with the EEOC on November 21, 2014.

61. About two weeks later Borja received a letter from RRC in which RRC stated that RRC was terminating Borja because for "insubordination."

62. The "insubordination" referenced in this letter arose out of Borja's attempts to complaint to RRC management regarding unlawful employment practices committed by Gordon.

63. Borja's last day of paid work for RRC was December 9, 2014.

## CAUSE OF ACTION I

## DISCRIMINATION BASED UPON RACE OR NATIONAL ORIGIN

64. Borja realleges and incorporates paragraphs 1-63.

65. Borja is a Chamorro man who was born and raised in the Commonwealth of the Northern Mariana Islands.

66. Gordon was one of Borja's supervisors while Borja was employed by RRC.

67. Gordon was empowered by RRC to take tangible employment actions against Borja.

68. Gordon created a hostile work environment for Borja by shouting at Borja, making racially charged comments to Borja, by making comments to other employees about Borja, and by doing other things which, on information and belief, Gordon undertook because Borja was a Chamorro and was born in the Commonwealth of the Northern Mariana Islands.

69. As a result of actions undertaken by Gordon, Borja's overtime hours were cut, Borja was given restrictions that kept Borja from performing Borja's job responsibilities, and RRC eventually demoted Borja to a position at RRC with fewer job responsibilities and a lower rate of pay.

70. The unlawful discrimination committed by RRC was intentional.

71. The unlawful discrimination committed by RRC was done with malice and with reckless indifference for Borja's federally protected rights.

72. As a result of RRC and Gordon's actions, Borja suffered irreparable injuries, including but not limited to emotion distress, loss of pay, loss of benefits, and other damages for which RRC should compensate Borja.

## CAUSE OF ACTION II

## RETALIATION

73. Borja realleges and incorporates paragraphs 1-71.

74. Borja engaged in activity protected by Title VII when he filed an intake questionnaire with the EEOC on November 10, 2014, alleging that RRC, particularly Borja's supervisor, Gordon, was discriminating against Borja based upon Borja's race and national origin and asking that the EEOC take action against RRC.

75. Because RRC received a *Howecki* notice of Borja's EEOC claim on November 21, 2014, RRC and Gordon were aware of Borja's EEOC claim after November 21.

76. RRC terminated Borja's employment less than three weeks after RRC received notice from the EEOC that Borja was initiating a Title VII proceeding.

77. RRC terminated Borja's employment because Borja initiated EEOC proceedings against RRC.

78. As a result of Borja's termination, Borja suffered irreparable injuries, including but not limited to emotion distress, loss of pay, loss of benefits, and compensatory damages for which Borja should be compensated.

## DEMAND FOR JURY TRIAL

Borja demands a jury trial on all issues triable before a jury.

## PRAYER FOR RELIEF

Plaintiff Borja respectfully request that the Court:

- Order RRC to pay Borja an appropriate amount of back pay with prejudgment interest plus an appropriate amount of front pay, in amounts to be determined at trial;
- Order RRC to pay compensatory damages for Borja's future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;
- Order RRC to pay punitive damages for engaging in discriminatory practices with malice or reckless indifference to Borja's federally protected rights;
- Order RRC to pay Borja's reasonable attorney's fees and costs incurred to bring this suit;
- Award any other relief to Borja that the Court deems just and proper;

Dated this 5th day of February, 2016.

/s/ Colin M. Thompson
COLIN M. THOMPSON, F0221
Attorney for Eric Agulto Borja